## UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| THOMAS GEORGE LENZE, an individual, | |
| Plaintiff, | Case No.  4:21-CV-453 |
| vs. | |
| WELLS FARGO CLEARING SERVICES, LLC AKA WELLS FARGO ADVISORS; and DOES 1 through 100, inclusive, | **JURY TRIAL DEMAND** |
| Defendant. | |

## PETITION

COME NOW Plaintiff, by and through his undersigned counsel, and for his cause of action against WELLS FARGO CLEARING SERVICES, LLC AKA WELLS FARGO ADVISORS; and DOES 1 through 100, inclusive, allege the following upon information and belief (including investigation made by and through Plaintiffs' counsel), except those allegations that pertain to Plaintiffs, which are based on personal knowledge:

## INTRODUCTION

1.     At the core of this case is Wells Fargo Clearing Services, LLC's, aka Wells Fargo Advisors' (hereinafter referred to as "Wells Fargo" and/or "Defendant") actions to drive out Plaintiff due to age and three years of continued adverse employment actions. At the outset of what transpired there was a lack of communication, time pressure, and denial of reasonable options. Throughout the pendency of his remaining employ there were goals that were set, met by Plaintiff only to have new ones created without explanation or good cause. Despite a long and successful 46-year career as a Broker (and desire to finish his career out at the company) the end result was a resignation the breaking point.

1

## PARTIES

2.      Plaintiff was, and remains a resident of Blaine County, Idaho.

3.      Defendant Wells Fargo Clearing Services, LLC, aka Wells Fargo Advisors is a Delaware corporation with its principal place of business in St. Louis, Missouri at One North Jefferson Avenue, St. Louis, Missouri, 63103.

## JURISDICTION AND VENUE

4.      Venue properly lies in this District pursuant to 28 U.S.C. § 1332 because Defendants are subject to personal jurisdiction within this District.

5.      At all relevant times, Defendant Wells Fargo Clearing Services, LLC's members include one or more residents and citizens of the State of Missouri, such that Defendant Wells Fargo Clearing Services, LLC is a citizen of Missouri.

6.      At all relevant times, Wells Fargo Clearing Services, LLC had its principal place of business  at 221 Bolivar Street Jefferson City, Missouri 65101.

7.      At  all relevant times, Defendant Wells Fargo Advisors members include one or more residents and citizens of the State of Missouri, such that Defendant Wells Fargo Advisors is a citizen of Missouri.

8.      At all relevant times, Defendant Wells Fargo Advisors had its principal place of business at One North Jefferson, St. Louis, Missouri 63103.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.      Plaintiff timely filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC") on or about November 3, 2020.

10.     The parties entered a tolling agreement on March 3, 2021 tolling any applicable statutes of limitations and/or similar time bars for the filing Claims as against Wells Fargo Advisors arising out of Plaintiff's employment and resignation.

11.     Plaintiff received a Notice of Right to Sue from the EEOC on December 4, 2020.

12.     Plaintiff has exhausted all administrative remedies.

**FACTUAL ALLEGATIONS**

13.     Plaintiff incorporates as preceding paragraphs as though fully alleged herein.

14.     Mr. Lenze served as Senior Vice President-Investment Officer/Broker for Wells Fargo beginning in September of 2012. As a condition of his employment, Mr. Lenze agreed to work out of an office established in Ketchum, Idaho. Mr. Lenze has been a member of the industry for 46 years and up until the age discrimination and hostile work environment he has endured at the hands of Wells Fargo—as well as his constructive termination in February of 2020—he had every intention of serving the remainder of his career as a Broker in their employ.

15.     The parties entered into a series of Promissory Notes ("the Note")—based on advanced Production Bonuses—which included the January 26, 2016 Promissory Note in the amount of $122,150.00 with interest thereon at a rate of 2.58%. Under the terms of the Note Mr. Lenze was responsible for paying 120 equal monthly installments of principal and interest in the amount of $1,155.96, beginning on the December 2015 and continuing on the 1st of each month thereafter until paid in full (to be due and payable on November 2025).[1]

16.     Mr. Lenze's employment with Wells Fargo *also* included a Performance Award Contribution and Deferral Plan (as Amended and restated as of January 1, 2017), ("the Deferral Plan"). The Deferral Plan was designed to provide a select group of management and other highly compensated individuals in the employ of one or more participating employers, including Wells Fargo, with the opportunity to earn additional incentive compensation contingent upon

---

[1] In an action filed through the Financial Industry Regulatory Authority (FINRA), Wells Fargo now claims the outstanding balance under the Note is $78,186.04 with an additional 3% default interest following Plaintiff's constructive termination.

their attainment of pre-established performance objectives and their completion of designated service periods (yet on information and belief this Plan was not directed toward just a "select group.") As of December 31, 2019, Mr. Lenze had earned a market value of $253,247.24 (originally set to vest in 2022).[2]

17.     In October of 2017, Wells Fargo informed Mr. Lenze they were shutting down his Ketchum office. Wells Fargo did not give a reason for the closure. Mr. Lenze and a gentleman he shared the office with, Matt Coleworhty, were only given days to let Wells Fargo know of their plans. This is considered a "displacement" or "involuntary termination" by Wells Fargo. Mr. Lenze was not offered any compensation package, options, or assistance following this displacement.[3] Further, Mr. Coleworhty and Mr. Lenze were denied the ability to work out of the Wells Fargo Branch in the area and only given the Twin Falls office, approximately 80 miles away as their relocation option.

18.     In 2017 Mr. Lenze and Mr. Coleworhty were both in their late 60s. Mr. Lenze asserts the intention of Wells Fargo in this displacement was to get rid of Mr. Lenze and Mr. Coleworhty due to their advancing age—while keeping their clients (clients they had brought to Wells Fargo).

---

[2] Discussed more fully infra, the Plan is an employee benefit plan under the Employee Retirement Income Security Act, "ERISA". A "pension benefit plan" or "pension plan" is defined as: any plan, fund, or program which was heretofore or is hereafter established to or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund or program—(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond. 29 U.S.C. § 1002(2)(A). The Deferral Plan was not negotiated by the parties and was provided in a take-it-or leave-it manner.
[3] Wells Fargo policy (at least in their online employee handbook) is that upon displacement "…the company will provide you with information about the programs or services available to assist you during the transition period. The Benefits Book provides information on the Wells Fargo & Salary Continuation Pay Plan, which governs eligibility for employees who are displaced and is designed to provide compensation to assist eligible employees in these situations while seeking new employment." It further states, "Wells Fargo provides a 60-day notice period to all displaced employees, unless otherwise required by federal, state or local laws." https://teamworks.wellsfargo.com/handbook/HB_Online.pdf.

4

19.     As part of this displacement, Mr. Coleworhty was offered a separation package which included payment of his deferred compensation (per section 3.14 "Involuntary Termination" section of the Deferral Plan includes an employee's displacement). On information and belief, his promissory note was paid and his deferred compensation had vested. By contrast Wells Fargo never offered Mr. Lenze a separation/displacement package upon displacement, never discussed the offset of the note, and never discussed his deferred compensation—this deferred compensation was earned and owed to him as a "pension benefit plan" under ERISA (Employee Retirement Income Security Act of 1974). Therefore it is subject to ERISA's funding, vesting, non-forfeitability, and other requirements. Mr. Lenze participated in the Deferral Plan since his employment in 2012.

20.     Not providing *any* displacement options (which are understood to be the policy of Wells Fargo on displacement) Mr. Lenze had no choice but to continue under Wells Fargo's only option provided—stay on as an employee and work in the Twin Falls office. This was especially true given the subject Note. They had him over a barrel. Thereafter, a concerted effort began to drive Mr. Lenze out. Wells Fargo did this by continuing the discriminatory behavior that began with the closure of the office and creating intolerable, hostile, working conditions that no reasonable person could withstand.

21.     Mr. Lenze was required thereafter, including at over the age of 70, to commute three and a half hours every day to an office in Twin Falls, Idaho. This was on a precarious two-lane highway with inclement weather conditions in the high country of Idaho. This road was precarious in the best of winter conditions and was often closed at worst. Wells Fargo initially advised Mr. Lenze he would be able to work remotely then continued to deny him the ability to do so—changing the reasoning behind such denial as they sought fit.

22.     Wells Fargo initially claimed this denial for remote access was related to a compliance issue. Mr. Lenze had no customer complaints or compliance issue and has been a significant revenue producer for Wells Fargo. Yet, they claimed he had a compliance issue because he had a certain percentage of his portfolio in "Unit Trust." This had nothing to do with a client's complaint nor a sales practice issue. Nonetheless, they put him under heightened supervision and denied him remote access. As a result, Mr. Lenze did zero Unit Trust business in that first year at the Twin Falls. This heightened supervision also prevented Mr. Lenze from seeking other opportunities. On information and belief, a recruiter was interested in employing Mr. Coleworthy and Mr. Lenze but was uninterested once they discovered Mr. Lenze was under heightened supervision.

23.     In the second year, after demonstrating he had no business in Unit Trust, Wells Fargo then denied his remote access claiming he had to have an investment plan in writing for all his clients—though his is not a Certified Financial Planner. Nonetheless, he completed this and was still denied remote access. In addition, Mr. Lenze was required to travel to mandatory meetings with his manager, John Gonnison, at his own expense to Spokane, Washington and Boise, Idaho.

24.     In his last year with Wells Fargo required Mr. Lenze to charge *all* his clients an Asset Management Fee, regardless or the status. These were clients Mr. Lenze brought with him to Wells Fargo, and remain with him to this day. Despite, disagreeing with the reasoning behind this and the impact it would have on his clients who held certain stock for some time, Mr. Lenze converted a percentage of his clients to managed business. Wells Fargo continued to deny him remote access and remove his heightened supervision. This was an unacceptable interference with Mr. Lenze's clients that he had brought to Wells Fargo—all so that Wells Fargo could

forecast their revenue in a new way. None of these requirements existed for Mr. Lenze or Mr. Coleworhty prior to the office closure.

25.     Mr. Lenze repeatedly complained to his manager, Mr. Gonnison. Despite these complaints, he refused to change Mr. Lenze's status or rectify these discriminatory conditions. Mr. Lenze also complained to the office manager, Annette Fenton, of these conditions. Ms. Fenton suggested Mr. Lenze call Human Resources and make a complaint—which he did to no avail.

26.     On February 6, 2020, unable to bear the environment, Plaintiff submitted his resignation informing Wells Fargo Advisors of his decision.

## FIRST CLAIM FOR RELIEF
### (Violations of Title VII)

27.     Plaintiff incorporates all preceding paragraphs as though fully alleged herein.

28.     At all times relevant, Defendant is an "employer" as defined by 42 U.S.C. § 2000e-(b)

29.     Plaintiff is a member of a protected class of employees for people over 40.

30.     Defendant, through the acts of the above-mentioned individuals and Plaintiff's supervisors, created an abusive and hostile work environment on the basis of age. Defendant subjected Plaintiff to these discriminatory acts and adverse employment actions as described above.

31.     Such actions were severe enough to alter Plaintiff's job and created a hostile working environment.  Defendant further directly discriminated against Plaintiff in the conditions of his employment, including, but not limited to closure of Plaintiff's office based on his age, without ample notice, discussion of employment options.  Defendant further retaliated

against Plaintiff for asserting his rights and engaging in protected activity pursuant to Title VII by taking materially adverse employment actions against him, including, but not limited to, constantly moving goals, denial of remote access and ultimately his employment being constructively terminated.

32.     As a direct, foreseeable, and proximate result of Defendant's actions, through the individuals identified herein, Plaintiff has suffered and continues to suffer grievous and extensive damages, entitling Plaintiff to recover the following damages in amounts to be proven at trial, but included but are not limited to wages owed to Plaintiff; past and continuing emotional distress, mental anguish, pain and suffering, humiliation, and enjoyment of life; and such further relief as the Court deems necessary and proper in the public interest.

33.     Under 42 U.S.C. 2000e-5(k), reasonable attorneys' fees, court costs, and expert witness fees, regarding pursuing Plaintiff's rights under this cause of action, besides punitive damages.

## PRAYER

**WHEREFORE**, Plaintiff respectfully requests that the Court enter judgment in her favor and against Defendant, and award this relief:

a.  Entry of a judgment for Plaintiff and against Defendant for the actual and/or compensatory damages sustained by Plaintiff for violations identified and any other injury or claim that may be discovered during the discovery process for which the law holds Defendant liable and responsible in an amount to be determined by a jury;

b.  Actual and compensatory damages to include lost past and future wages; lost past and future benefits, including, but not limited to, lost vacation, lost bonuses, lost sick leave, lost medical benefits, lost retirement plan, and other like employee benefits; lost past and future

private vendor floral contract income; past and continuing emotional distress, mental anguish, pain and suffering, humiliation, and enjoyment of life;

     c.      Punitive damages pursuant to, *inter alia*, 42 U.S.C. § 1981a for engaging in discriminatory practices with malice or with reckless indifference to the federally protected rights of Plaintiff;

     d.  Under 29 U.S.C. § 2617(a)(3), 42 U.S.C. § 12205, reasonable attorneys' fees, court costs, and expert witness fees, regarding pursuing Plaintiff's rights under this cause of action; and,

     d.  A judgment for such other relief, general or specific, as the Court may deem appropriate, just and equitable.

### JURY DEMAND

Plaintiff respectfully demands a trial by jury on all issues.

DATED this 20th day of April, 2021.


                           */s/ Thomas J. Preuss*
                           Thomas J. Pruess MO Bar 54923
                           PREUSS | FOSTER
                           100 Chesterfield Business Parkway
                           Chesterfield, MO 63005
                           Telephone: (314)207-3667
                           *tjpreuss@pflaw.com*

                           Jennifer A. Lenze, CA Bar No. 246858
                           LENZE LAWYERS, PLC.
                           1300 Highland Avenue, Suite 207
                           Manhattan Beach, CA 90266
                           Telephone: (310) 322-8800
                           Facsimile: (310) 322-8811
                           *jlenze@lenzelawyers.com*

                           FINSON LAW FIRM
                           Lowell W. Finson, Esq.  CA Bar No. 275586
                           126 Westwind Mall

Marina del Rey, CA 90292
Telephone: (602) 377-2903
Facsimile: (310) 425-3278
lowell@finsonlawfirm.com

*Attorneys for Plaintiff*